IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| EDDIE PIKULIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:18-CV-4-D |
| | § | |
| ASARCO, LLC, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
TO DENY PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT
AND GRANT DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO
ENFORCE SETTLEMENT AGREEMENT AND CROSS-MOTION TO ENFORCE
SETTLEMENT AGREEMENT**

Before the Court is *Plaintiff's Motion to Enforce Settlement Agreement* [ECF 37] and *Defendant's Objection to Plaintiff's Motion to Enforce Settlement Agreement and Cross-Motion to Enforce Settlement* [ECF 39]. Because the Court finds the settlement agreement releases the Asarco Health Plan[1] from liability for future medical expenses related to the incident in question, the undersigned recommends that *Plaintiff's Motion to Enforce Settlement Agreement* [ECF 37] be DENIED and *Defendant's Objection to Plaintiff's Motion to Enforce Settlement Agreement and Cross-Motion to Enforce Settlement* [ECF 39] be GRANTED.

### I. FACTUAL BACKGROUND

Plaintiff Eddie Pikulin ("Pikulin") suffered a work-related injury (the "incident") and filed this negligence suit against ASARCO, LLC ("Asarco"), his former employer. The Plan 504 Asarco

---

[1] For the reasons stated herein, the employee benefit plan mentioned in the mediator's proposal and discussed in the parties' briefing, as well as all employer-sponsored benefit plans provided by Asarco to Pikulin, are released from liability for future medical expenses related to the incident in question.

Health Plan ("the Plan") paid "nearly all of the medical expenses [Pikulin] incurred for his shoulder treatments" as a result of the incident. [ECF 39 at 2; 39-1 at 5]. The Plan is an employer-sponsored ERISA plan. [ECF 39-1 at 5; 41 at 3]. Since the incident, Pikulin retired and receives health insurance benefits under the Plan as a retired Asarco employee. [ECF 40 at 2; 41 at 3]. The parties attended mediation on November 5, 2018 but did not reach an agreement. [ECF 38 at 3]. Afterwards, the mediator sent both parties a settlement proposal stating:

> The mediator proposes that this case settle for the sum of [confidential settlement amount], new money, meaning that ASARCO Health Plan will waive its claim of subrogation. Please acknowledge your acceptance or rejection below and return this Mediator's Settlement Proposal to me by 4 p.m. on Tuesday, November 6, 2018. If both parties agree, the case will settle. If any party disagrees, the case will not settle. The decision by each party will remain confidential. You may email this form to ****@********lawfirm.com or fax it to (806) ***-****.

[ECF 38 at 3, 6, 8]. Both parties agreed by providing the mediator a signed copy of the proposal. [ECF 38 at 3–8]. A notice of settlement was filed on November 7, 2018 [ECF 35], and the case was administratively closed. [ECF 36]. The parties exchanged drafts and edits to the final settlement agreement but reached an impasse regarding whether the settlement agreement releases the Plan from liability for future medical expenses related to the incident. [ECF 37 at 2; 39 at 3–4]. Both parties filed motions to enforce the settlement agreement. [ECF 37; 39]. The issue before the Court is whether the settlement agreement releases the Plan from liability for future medical expenses related to the incident.

## II.   ANALYSIS

" '[A]lthough federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally.' " *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987) (quoting *Lee v. Hunt*, 631 F.2d 1171, 1173–74 (5th Cir.

Unit A Dec. 1980)); *Borden v. Banacom Mfg. & Mktg., Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988); *see KeyCorp v. Holland*, No. 3:16-CV-1948-D, 2017 WL 3242294, at *2 (N.D. Tex. July 28, 2017). Because Texas law controls this case, Texas Rule of Civil Procedure 11 ("Rule 11") also applies. *See Anderegg v. High Standard, Inc.*, 825 F.2d 77, 80 (5th Cir. 1987); *Condit Chem. & Grain Co. v. Helena Chem. Corp.*, 789 F.2d 1101, 1102–03 (5th Cir. 1986). Rule 11 provides that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."

"In construing a written contract, [the] primary objective is to ascertain the parties' true intentions as expressed in the language they chose." *Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). "If a contract 'is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe it as a matter of law.'" *Roberts v. Overby-Seawell Co.*, 2018 WL 1457306, at *7 (N.D. Tex. Mar. 23, 2018) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Id*. (quoting *Texas v. American Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006)). "A contract is not ambiguous simply because the parties advance different interpretations." *Id*. (citing *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)).

### A. Compliance with Rule 11

The Court first considers whether the alleged settlement agreement is in writing, signed, and filed with the papers as part of the record, such that Rule 11's requirements are met. The Texas Supreme Court has held that a series of letters can satisfy Rule 11. *See Padilla v. LaFrance*, 907

S.W.2d 454, 460 (Tex. 1995). Additionally, district courts in the Northern District of Texas have made an Erie determination that a series of electronically signed emails can satisfy the "in writing" requirement. *See KeyCorp*, No. 3:16-CV-1948-D, 2017 WL 3242294, at *2–3 (citing *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 708 (N.D. Tex. 2013)).

The mediator sent the settlement proposal to both parties on November 5, 2018. [ECF 38 at 3]. Pikulin agreed to the proposal on the same day by sending the mediator a signed copy of the proposal. [ECF 38 at 3, 6]. Asarco requested and received additional time to respond, later accepting the proposal by email with a signed copy of the proposal attached. [ECF 38 at 3–5, 7–8]. The mediator forwarded the Asarco email to Pikulin's attorney because it "contained statements…relevant to the settlement." *Id*. Pikulin's signed copy of the mediator's proposal and Asarco's email and attached signed copy of the mediator's proposal form the settlement agreement. [ECF 38 at 3–8]. Because both copies of the mediator's proposal were signed, the Court concludes the "in writing" and "signed" requirements of Rule 11 are satisfied. Rule 11 also requires the settlement agreement be filed with the papers as part of the record. *Padilla*, 907 S.W.2d at 461. This requirement is met because the record establishes Pikulin filed both signed copies of the mediator's proposal and Asarco's accompanying email with its Motion. [ECF 38 at 6–8]. *See KeyCorp*, No. 3:16-CV-1948-D, 2017 WL 3242294, at *3.

### B. Scope of the Release

The terms of the settlement agreement are unambiguous and clear. The email forwarding Asarco's signed copy of the proposal states Asarco "accepts the Mediator's proposal and agrees to full mutual release of claims, including waiver by Asarco Health Plan of any right to subrogation, in return for a cash payment of [confidential settlement amount] by Asarco to Plaintiff." [ECF 38 at 7]. The email also states the agreement is "subject to standard terms to be

memorialized in a final written settlement agreement, including confidentiality, non-disparagement, and Medicare set-aside." *Id*. Pikulin made no objections to these conditions. The communications reflect an understanding that the scope of the mediator's proposal was broad enough to create obligations as to Asarco and the Plan and that a "full mutual release" of claims was expected, without qualification as to any party.[2] [ECF 38 at 7].

Nevertheless, Pikulin argues the Plan is a nonparty not covered by the release. In response, Asarco argues the Plan is an employer-sponsored ERISA plan, and therefore, not legally distinct from Asarco for purposes of determining the scope of the release. Thus, the parties dispute whether the Plan is legally distinct from Asarco for purposes of determining the scope of the release. Upon review, it seems this issue has created a disagreement among the courts. *See Halldorson v. Wilmington Trust Ret. and Institutional Servs. Co.*, 182 F. Supp. 3d 531, 543–46 (E.D. Va. 2016) (collecting cases and ultimately adopting the reasoning that the Separation Agreement and General Release in question covered a plan because it was an affiliate of the employer).

Courts in our circuit have treated employee benefit plans as a closely-related "affiliate" of the employer, and in some instances have regarded a plan and the employer as the same entity, such that releases entered into by the employer also cover the employee benefit plan.[3] *See*

---

[2] Although reference to extrinsic evidence is not necessary to determine the release's scope, both parties filed various emails between counsel, including drafts of the proposed Final Release and Compromise Settlement Agreement ("CSA"). [ECF 38; 39-1]. Even if the Court were to find the scope of the release ambiguous, making reference to extrinsic evidence appropriate, such evidence supports the Court's finding. As Asarco points out, Pikulin's final proposed draft of the CSA did not modify paragraph 1.01, which lists the Plan and the ASARCO Occupational Injury Benefit Program as released entities. [ECF 39-1 at 28–29; 41 at 2–3].

[3] Employee benefit plans are treated as being affiliated with the employer within the Sixth and Seventh Circuits as well. *See Howell v. Motorola, Inc.*, No. 03 C 5044, 2005 WL 2420410, at *6 (N.D. Ill. Sept. 30, 2005); *Goepfert v. Trustmark Ins. Co.*, 541 F. Supp. 2d 1052, 1055–56 (E.D. Wis. 2008) (reasoning that because the employee benefit plan was "an entity established by [the employer], acting in its capacity as an employer seeking to provide benefits to its employees, [that] would not exist separate and apart from [the employer]," it was "closely associated with [the employer]" and was deemed an "affiliate" under the terms of the release); *Sullivan v. Cap Gemini Ernst & Young U.S.*, 573 F. Supp. 2d 1009, 1018 (N.D. Ohio 2008) (agreeing with the *Goepfert* court that a release need not "explicitly refer to an ERISA plan in order to be enforced against the plan," and "conclud[ing] that [the employer] and the Plan are so closely associated as to be 'affiliates' within the meaning of the waiver").

*Slaughter v. AT&T Info. Sys., Inc.,* 905 F.2d 92, 94 (5th Cir. 1990); *see also Bordonaro v. Union Carbide Corp.*, No. Civ. A. 01-1177, 2002 WL 32824, at *3 (E.D. La. Jan. 11, 2002) (reasoning that even though the release did not specifically name the employer-funded plan, the employer and the plan were the same entity for purposes of interpreting the release agreement). The Court finds *Slaughter* instructive. In that case, the court held that res judicata barred suit against an employer-administered ERISA plan even though it was not made party to the first suit against the employer. 905 F.2d at 94. The court reasoned that the plan and the employer were the same party for res judicata purposes because the employer-maintained plan had no existence apart from the employer. *See id*.

     *Bordonaro* is also informative because it relies on *Slaughter*. In *Bordonaro*, plaintiff sued her employer, and the case was settled and dismissed. No. Civ. A. 01-1177, 2002 WL 32824, at *1. Plaintiff later sued the employer and its long-term disability plan for ERISA benefits. *Id*. Defendants argued the release executed in the previous settlement covered plaintiff's claims for ERISA benefits in the subsequent suit. *Id*. The release named the employer and related entities and individuals but did not mention the plan. *Id*. at *2. The court stated "[f]or purposes of contract interpretation, there is nothing that compels the conclusion that an ERISA benefits plan, for all purposes, must be considered a distinct entity from that of the establishing entity." *Id*. at *3. Accordingly, the court held that the employer and the plan were the same entity for purposes of interpreting the release, and therefore, the employer *and* the plan were released from liability for ERISA benefits. *Id*. [4]

---

[4] In contrast, courts in the First, Tenth, and Eleventh Circuits have held an employer and an employee benefit plan are two separate legal entities and a release of one does not release the other. *See Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust*, 191 F. Supp. 2d 223, 233 (D. Mass. 2002) (reasoning that the administrator of a plan is a legal entity separate from the employer, ERISA § 502(d), 29 U.S.C. § 1132(d), so releasing the employer does not automatically release the administrator); *Hubbert Prudential Ins. Co. of Am.*, 105 F.3d 669, 1997 WL 8854, at *3 (10th Cir. Jan. 10, 1997) (reasoning that an employer and a plan are two separate entities, and a release of one does not release the other); *Antoniou v. Thiokol Corp. Grp. Long Term Disability Plan (Plan No. 503)*, 849 F. Supp. 1531,

Here, the record reflects that the Plan is the type of employer-sponsored ERISA plan the Fifth Circuit court of appeals has regarded as indistinct from the employer. [ECF 39 at 2; 39-1 at 5; 41 at 2–3]. The settlement agreement's unambiguous language further indicates the release covers the Plan. Although the Plan is not a named defendant, the mediator's proposal specifically names *only* "ASARCO Health Plan." [ECF 38 at 6]. Pikulin concedes the settlement agreement settles "this case" and releases Asarco from "claims, past and future, related to the incident in question." [ECF 40 at 1–2]. Nothing in the record suggests it is reasonable to conclude that the only entity or individual specifically mentioned in the mediator's proposal is not released of the same liability. The settlement agreement's language and the case law support a finding that Asarco and the Plan are not distinct entities for purposes of determining the scope of the release. Because the parties agree Asarco is released from liability for future medical expenses related to the incident [*See* ECF 41; 40 at 1–2], the Plan is released of the same liability.

For the reasons stated above, the undersigned recommends the settlement agreement be enforced as written, subject to mutual releases, confidentiality, non-disparagement, and Medicare set-aside, as agreed by both parties. [ECF 37 at 2; 39 at 3].

### III.    RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that *Plaintiff's Motion to Enforce Settlement Agreement* [ECF 37] be DENIED and *Defendant's Objection to Plaintiff's Motion to Enforce Settlement Agreement and Cross-Motion to Enforce Settlement* [ECF 39] be GRANTED.

---

1534 (M.D. Fla. 1994) (reasoning that an employer and an employee benefit plan are separate legal entities and a release in favor of the employer does not also release claims against the plan).

## IV. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED February 21, 2019.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).